IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 3:16-cv-941-MHT-GMB |
| ) | [WO] |
| GLORY DAYS ENTERPRISES, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for consideration and disposition or recommendation on all pretrial matters as may be appropriate. Doc. 15. Pending before the court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Entry of Default Judgment against Defendant Malcolm Phaneuf, individually and as an officer, director, shareholder and principal of Glory Days Enterprises, Inc. d/b/a Glory Days Two and against Glory Days Enterprises, Inc. d/b/a Glory Days Two. Doc. 31.

For the reasons stated herein, the Magistrate Judge RECOMMENDS that the Motion for Entry of Default Judgment be GRANTED.

**I. BACKGROUND**

Joe Hand Promotions filed a complaint in this case for violations of the federal Communications Act, specifically 47 U.S.C. § 553 and 47 U.S.C. § 605. Joe Hand Promotions alleges that Glory Days Enterprises and Malcolm Phaneuf violated those

statutes by willfully intercepting or receiving interstate communication of *Ultimate Fighting Championship® 187: Johnson v. Cormier* and *Ultimate Fighting Championship® 190: Rousey v. Correria* and publishing those programs to patrons at Glory Days Two, an establishment operated by the defendants.

A summons was served on Phaneuf in Phenix City, Alabama on March 4, 2017. Doc. 26. A summons was served on Glory Days Enterprises through Phaneuf in Phenix City, Alabama, also on March 4, 2017. Doc. 27. The record reflects that the return receipt was filed with the court. After the Defendants failed to submit a responsive pleading or otherwise appear, on September 13, 2017, Joe Hand Promotions filed an application with the Clerk of Court for an Entry of Default. On September 22, 2017, the Clerk of Court entered a default against Glory Days Enterprises, Inc. d/b/a Glory Days Two and Malcolm Phaneuf. Doc. 28.

Joe Hand Promotions filed a Motion for Default Judgment with accompanying documents on October 2, 2017. The motion was denied with leave to re-file due to several deficiencies in the motion and supporting documents. Doc. 30. The instant motion was filed on March 6, 2018 with corrected documentation in support.

## II.  STANDARD OF REVIEW

Under Rule 55(b)(2) of the Federal Rules of Civil Procedure, a district court may enter a default judgment against a defendant who was properly served and who has failed to defend or appear. Fed. R. Civ. P. 55(b)(2); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015). When a default judgment is entered, the court accepts all of the complaint's factual allegations as true. *See, e.g., Cohan v. Sparkle Two,*

*LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015).  However, "[w]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (internal quotation marks omitted).  Thus, the court may only enter a default judgment if the complaint's factual allegations "provide a sufficient legal basis for entry of a default judgment." *Cohan*, 309 F.R.D. at 666.

In the Eleventh Circuit, this standard is akin to the standard applied in a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Surtain*, 789 F.3d at 1245.  Therefore, the court must determine whether the complaint "'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 662).  The Eleventh Circuit has cautioned, however, that "there is a strong policy of determining cases on their merits," and default judgments are therefore viewed with "disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003).

Once the court is satisfied that a default judgment is warranted, the court "turns to the terms of the judgment." *Cohan*, 309 F.R.D. at 667.  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  Under Rule 55, the court may conduct hearings or make referrals to determine the amount of damages and establish the truth of any factual allegation. Fed. R. Civ. P.

3

55(b)(2). "Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief." *Cohan*, 309 F.R.D. at 667.

### III. DISCUSSION

Defendants were properly served and failed to defend or appear, so the court turns to the analysis for considering a default judgment, specifically: (1) jurisdiction, (2) liability, and (3) damages. *See Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004). This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The remaining considerations of liability and damages are discussed below.

**A.    Liability**

Sections 553 and 605 of Title 47 of the United States Code prohibit the unauthorized interception and reception of cable programming services. To establish a violation of § 605 or § 553, a plaintiff must establish that (1) the defendants intercepted the program, (2) the defendants did not pay for the right to receive the transmission, and (3) the defendants displayed the program to patrons of their commercial establishment. *Joe Hand Promotions, Inc. v. Sports Nut, LLC*, 2017 WL 6492546, at *2 (N.D. Ala. Dec. 19, 2017). In addition, to establish liability of a defendant in his individual capacity as an officer, director, shareholder, a plaintiff must show that the defendant had a right and ability to supervise the violations and a strong financial interest in these activities. *Sports Nut, LLC*, 2017 WL 6492546, at *2.

Joe Hand Promotions pleads facts in the complaint and provides affidavit and documentary evidence which, taken together, establish the elements of its claims. Joe

4

Hand Promotions presents an affidavit from its President in which he states that Joe Hand Promotions is a closed-circuit distributor of sports and entertainment programming that purchased and retained the exhibition rights to *Ultimate Fighting Championship®* 187: *Johnson v. Cormier* and *Ultimate Fighting Championship®* 190: *Rousey v. Correria.* Doc. 31-3. According to the affidavit, the company retained auditors and law enforcement personnel to identify signal pirates and discovered that the defendants, at the establishment doing business as Glory Days Two, exhibited the two identified programs without lawfully obtaining a license to show the programs. Doc. 31-3.

In the complaint, Joe Hand Promotions alleges that by "unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system, Defendants willfully intercepted or received the interstate communication of the Programs or assisted in such actions." Doc. 1 at 3.

Joe Hand Promotions also provides the affidavits of Investigators Douglas Sharp and Jason Tillery who observed the two programs being broadcast at Glory Days Two. Tillery observed a broadcast of *Ultimate Fighting Championship®* 187: *Johnson v. Cormier* at Glory Days Two on May 23, 2015 and Sharp observed a broadcast of *Ultimate Fighting Championship®* 190: *Rousey v. Correria* at Glory Days Two on August 1, 2015. Docs. 31-4 & 31-5.

In the complaint, Joe Hand Promotions alleges that individual defendant Phaneuf had a right and ability to supervise the activities of Glory Days Two and had an obvious and direct financial interest in the activities of Glory Days Two. Doc. 1 at 2. The complaint

also alleges that the defendants' actions were committed willfully and with the purpose and intent to secure a commercial advantage and private financial gain. Doc. 1 at 4.

Considering together the above-stated allegations in the complaint and statements in affidavits, the court finds that Joe Hand Promotions has established that (1) Glory Days Enterprises intercepted *Ultimate Fighting Championship® 187: Johnson v. Cormier* and *Ultimate Fighting Championship® 190: Rousey v. Correria*, (2) Glory Days Enterprises did not pay for the right to receive the transmissions, and (3) Glory Days Enterprises displayed the programs to patrons of the establishment Glory Days Two. *See Sports Nut, LLC,* 2017 WL 6492546, at *2. By virtue of his default, Phaneuf has admitted the allegations that he had supervisory control over Glory Days Enterprises' actions and that he had a strong interest in the financial benefit gained from showing the programs. *See Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, at *6 (S.D. Ala. Apr. 21, 2011). Therefore, Joe Hand Promotions is entitled to default judgment against the defendants for violations of sections 553 and 605. *See Zuffa*, 2011 WL 1539878, at *6.

**B.     Remedies**

Joe Hand seeks statutory, rather than actual, damages in this case. Generally, a district court may enter a default judgment awarding damages without a hearing in a case where the plaintiff has not requested a hearing and has moved only for statutory, and not actual, damages. *Joe Hand Promotions, Inc. v. McBroom*, 2009 WL 5031580, at *3 (M.D. Ga. Dec. 15, 2009). In addition to statutory damages, Joe Hand Promotions seeks attorneys' fees and costs.

6

### *1.* *Statutory Damages*

A district court within this circuit has determined that when a court finds that a defendant's conduct has violated both sections 553 and 605 of the Communications Act, a plaintiff may recover damages under only one of those sections, but may elect to recover damages under § 605 to seek a higher damages award. *See Kingvision Pay-Per-View Corp., LTD. v. Wright*, 2006 WL 4756450, at *2 (M.D. Fla. Oct. 27, 2006). In this case, Joe Hand Promotions has stated that it elects damages pursuant to 47 U.S.C. § 605.

Section 605 provides that an aggrieved party may recover an award of statutory damages for each violation "in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the court finds "that the violation was committed willfully and for the purposes of direct or of indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii).

Joe Hand Promotions seeks statutory damages in the amount of $10,000, or $5,000 per violation, and seeks additional damages pursuant to 47 U.S.C. § 605(3)(C)(ii) in the amount of $40,000, or $20,000 for each violation. In support of this claim for damages, Joe Hand Promotions has provided affidavits of Sharp and Tillery and a Rate Card. Sharp states in an affidavit that the approximate capacity of Glory Days Two is 100 people, whereas Tillery put the estimate at 75 people. Docs. 31-4 & 31-5. Sharp counted 20 and 37 people in the establishment at various points during his visit. Doc. 31-4. Tillery counted

8, 11, and 12 patrons when he counted patrons during his visit. Doc. 31-5. Both men stated that there was no cover charge at Glory Days Two when they visited.

Joe Hand Promotions also has submitted evidence in the form of a Rate Card which establishes the cost for establishments to legally purchase and broadcast a program. Doc. 31-8. According to that evidence, the rate for an establishment with a capacity of 51 to 100 patrons to purchase and broadcast a program is $1,100.00. Doc. 31-8.

The Eleventh Circuit has not established a method for calculating statutory damages under 47 U.S.C. § 605. Other district courts have awarded a flat amount, have based the award on the number of patrons in the establishment during the program multiplied by a number set by the court, or have based the award on the amount of the license fee if the defendant had paid the fee corresponding with its maximum capacity. *Zuffa, LLC*, 2011 WL 1539878, at *7 (collecting cases). The approach predominantly applied in the Eleventh Circuit is the license fee based on maximum capacity of the establishment. *See Joe Hand Promotions, Inc. v. Blanchard*, 2010 WL 1838067, at *3 (S.D. Ga. May 3, 2010) (noting that "courts-particularly those within the Eleventh Circuit—have ordered defendants to pay, as statutory damages, the amount of the license fee that they would have been charged if they had actually been authorized to show the program.").

This court is persuaded that the license fee method is the better method for calculating an award of statutory damages for a 47 U.S.C. § 605 violation. According to the evidence in the Rate Card submitted in this case, the defendants would have been charged $1,100 to broadcast each of the identified programs at Glory Days Two.

Accordingly, for the two violations established, Joe Hand Promotions is entitled to statutory damages in the amount of $2,200.

As noted, Joe Hand Promotions also seeks $40,000 in additional damages. Enhanced damages may be awarded when the violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The court finds that "[b]y virtue of the default, the Defendants have admitted to exhibiting the Program in the . . . commercial establishment, willfully and for financial gain." *J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009). In support of the damages claim, Joe Hand Promotions also has presented evidence that the broadcast programs were advertised on Facebook. Doc. 31-6.

In determining the amount of additional damages, courts consider several factors: (1) the number of violations, (2) defendant's unlawful monetary gains, (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event, and (5) whether the defendant collected a cover charge on the night of the event. *J & J Sports Prods., Inc. v. Tu*, 2008 WL 4833116, at *2 (N.D. Ill. Oct. 29, 2008). Courts also may consider the size of the venue and the number of patrons viewing the broadcast. *Tu*, 2008 WL 4833116, at *3 (stating that it considered that "the venue is a medium-sized one—having a capacity of approximately 150—and that the event did not draw a full house, suggesting that Defendants made only a modest profit from the unlawful showing of the boxing match"). Additionally, courts "must strike a balance between deterring other incidents of piracy by these Defendants and others, and not making the award such that it will put a small business out of business." *Arboleda*, 2009 WL 3490859, at *7.

Some courts, including district courts within the Eleventh Circuit, have awarded enhanced damages in the amount of three times the statutory damages awarded pursuant to § 605(e)(3)(C)(i)(II). *See, e.g., Sports Nut,* LLC, 2017 WL 6492546, *4 (using a multiplier of three where there was no cover charge and there was evidence of advertisement on Facebook).

This case is distinct from some decisions applying the multiplier of three because in this case there were two violations. *See McBroom*, 2009 WL 5031580, *5 (using a multiplier of three where there was no cover charge, advertisement, or repeat violation). But the persuasive reasoning of these courts—that the additional damages must provide a sufficient deterrent—still applies. *See Kingvision Pay-Per-View Corp., LTD.*, 2006 WL 4756450, at *3, n.8 (stating that the additional penalty pursuant to § 605(e)(C)(ii) in the amount of three times provides a sufficient deterrent to future violations by defendant and other establishments).

Accordingly, considering the defendants' two violations over a few months, evidence of advertisement, and evidence that there was no cover charge at Glory Days Two, and considering that the size of the venue and the number of patrons suggest only a moderate profit was made from the broadcasts, in light of the deterrent purpose of the additional damages provision, this court is persuaded that multiplying the license fee by three results in an appropriate amount of enhanced damages to award in this case.

### 2. *Attorney's Fees*

Section 605(e) provides that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C.

§ 605(e)(3)(B)(iii).  Because Joe Hand Promotions is the prevailing party in this action, it is entitled to an award of reasonable fees and costs.  When calculating reasonable attorney's fees, the Eleventh Circuit uses the lodestar method, which requires multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate—the customary fee charged by attorneys of comparable skills, experience, and reputation in the same community for similar legal services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Joe Hand Promotions has provided an affidavit from its counsel in which he states that six hours were spent on this litigation through the stage of preparation of a motion for default judgment. Doc. 29-2.  He states that he has 28 years of experience and his hourly rate is based on that experience and the approval by other courts of a $250 hourly rate, citing to other reported decisions. Doc. 29-2.  Counsel also states in the affidavit that costs were incurred in this case in the amount of $400 to file the action and $325 to effectuate service. Doc. 31-2.  In total, Joe Hand Promotions seeks $1,500 in attorney's fees and $725 in costs.

The reasonable hourly rate is determined by the locality in which the case was filed. *Adams v. City of Montgomery*, 2013 WL 6065763, at *2 (M.D. Ala. Nov. 18, 2013).  Courts may consider citations to prior cases involving the same fee applicant, comparable attorneys, or comparable litigation. *See, e.g., Hansen v. Deercreek Plaza*, LLC, 420 F. Supp. 2d 1346, 1350 (S.D. Fla. 2006).

As noted by counsel in his affidavit, a federal district court in Alabama has found $250 to be a reasonable hourly rate for anti-piracy litigation by counsel for Plaintiff in this

11

case. *See Sports Nut, LLC*, 2017 WL 6492546, at *5. The $250 rate is consistent with, and in fact lower than, the rate authorized in another case in this court in comparable litigation for an attorney with comparable experience. *See Adams*, 2013 WL 6065763, at *3 (stating "the Court has found the range of $300.00 to $375.00 applicable for attorneys with over 20 years of experience"). Therefore, the $250 rate is reasonable.

The court also must determine the reasonable amount of hours expended by counsel on the litigation. *Norman*, 836 F.2d at 1301. Hours that are "excessive, redundant or otherwise unnecessary" should be excluded. *Id.* The affidavit of counsel identifies researching, drafting, and filing of the following: the complaint, the motion to vacate order to show cause, the brief in support of the motion to vacate, and the motion for default judgment and accompanying brief. The court finds the six hours expended on those tasks to be reasonable and not excessive or unnecessary. Accordingly, the court finds that $1,500 in attorneys' fees and $725 in costs, as substantiated by affidavit of counsel, are due to be awarded in this case.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Joe Hand Promotions, Inc.'s Motion for Default Judgment (Doc. 31) be GRANTED and default judgment be entered in favor of Plaintiff and against Glory Days Enterprises, Inc. d/b/a Glory Days Two and Malcolm Phaneuf.

The Magistrate Judge further RECOMMENDS the following relief:

Statutory damages pursuant to 47 U.S.C. § 605 (3)(C)(i)(II) in the amount of $2,200 and enhanced damages pursuant to 47 U.S.C. § 605(3)(C)(ii) in the amount of $6,600

against the Defendants, jointly and severally.

Additionally, the court RECOMMENDS Joe Hand Promotions be awarded attorney's fees in the amount of $1,500 and costs in the amount of $725.

It is further ORDERED that the parties shall file any objections to this recommendation **on or before June 27, 2018**. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which an objection is being asserted. Frivolous, conclusive, or general objections will not be considered by the district court. The parties are advised that this report and recommendation is not a final order of the court, and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the district court of issues addressed in the report and recommendation, and shall bar the party from attacking on appeal factual findings in the report and recommendation that are accepted or adopted by the district court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 13th day of June, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE